*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESRAA ELKADRI, LIP, by Next Friend
ABDULKADER M. ELKADRI,

   Plaintiff-Appellee,

v

CHILDREN'S HOSPITAL OF MICHIGAN, also
known as VHS CHILDREN'S HOSPITAL OF
MICHIGAN, INC., also known as LEGACY CHM,
JEFF CLARK, M.D., and TAGELDIN AHMED,
M.D.,

   Defendants-Appellants,

and

DETROIT MEDICAL CENTER, also known as
VHS OF MICHIGAN, INC., also known as
LEGACY CHM, TENET HEALTHCARE
CORPORATION, ANN MEYERS, D.O., JI-YEON
KIM, M.D., ERIC MITTELSTAEDT, M.D.,
JENNEL CARRERAS, M.D., ROBERT CONWAY,
M.D., TIFFANY WIDNER, M.D., and JOHN
YERKES, M.D.,

   Defendants.

UNPUBLISHED
July 21, 2022

No. 357207
Wayne Circuit Court
LC No. 18-010381-NH

Before: JANSEN, P.J., and O'BRIEN and HOOD, JJ.

PER CURIAM.

Defendant Children's Hospital of Michigan (defendant hospital) and defendants Jeff Clark, M.D., and Tageldin Ahmed, M.D. (collectively "defendant physicians") appeal by leave granted the trial court's order denying their motion for summary disposition under MCR 2.116(C)(10).

-1-

The trial court's order denying summary disposition was predicated in part on its prior order granting plaintiff's motion to amend his witness list to add a standard-of-care expert, but limiting that expert's testimony to the defendant hospital's vicarious liability. For the reasons explained in this opinion, we vacate the order denying summary disposition and remand for clarification of the order granting plaintiff's motion to amend the witness list and for reconsideration of defendants' motion for summary disposition consistent with that clarification and our Supreme Court's decision in *Al-Shimmari v Detroit Med Ctr*, 477 Mich 280; 731 NW2d 29 (2007).

## I. FACTS AND PROCEEDINGS

Defendant physicians are specialists in the field of pediatric critical care and pediatric intensive care unit (PICU) medicine. At the times relevant to this case, they were employed by defendant hospital. In March 2016, EE, a legally incapacitated person, was hospitalized at defendant hospital after experiencing seizures. Plaintiff, as EE's conservator and next friend, brought this action alleging that while EE was hospitalized in defendant hospital's PICU, defendant physicians failed to issue appropriate orders to prevent the formation of pressure ulcers,[1] and failed to take appropriate action when the ulcers began to appear, leading to a proliferation of ulcers and their infection. Plaintiff alleged that defendants' mismanagement of EE's care caused permanent cognitive and developmental delays, neurologic and motor injuries, severe pain and discomfort, and diminishment of the quality of her life.

Consistent with MCL 600.2912, plaintiff filed affidavits of merit (AOM) from expert witnesses in the same professions as the healthcare professionals whose malpractice allegedly harmed EE. As relevant to this appeal, plaintiff filed an AOM from Stephen A. Lieberman, M.D., who purported to be an expert witness on the standard of care for PICU physicians. Plaintiff later learned, however, that Dr. Lieberman's credentials as a board-certified PICU expert had expired, rendering him unqualified to testify under MCL 600.2169. Accordingly, plaintiff moved to amend his witness list to substitute Timothy Carroll, M.D., as a PICU standard-of-care and causation expert in place of Dr. Lieberman.

Defendants generally opposed the motion, arguing that plaintiff could not establish good cause for the late substitution because plaintiff was not diligent in verifying Dr. Lieberman's credentials and unreasonably delayed bringing the motion. Despite their general opposition to the motion, defendants did "not object to plaintiff's addition of causation experts[] to support the claims against the Hospital nursing staff," though they still "strongly object[ed] to the addition of a new, standard of care expert(s) against the named physicians . . . ."

In an order dated July 7, 2020, the trial court granted plaintiff's motion, but limited Dr. Carroll's testimony, stating as follows:

> Good cause presented. However Dr. Carroll may be added as a pediatric expert as to standard of care and causation relating to the possible vicarious liability of the hospital only.

---

[1] Also referred to as "pressure sores" or "decubitus ulcers."

In response, defendants asked the trial court to clarify the limitations of Dr. Carroll's testimony, but the court treated defendants' motion for clarification as a motion for reconsideration and denied it, "find[ing] no palpable error."

Defendants thereafter moved for summary disposition under MCR 2.116(C)(10). According to defendants, the trial court's July 7, 2020 order limiting Dr. Carroll's testimony "to the possible vicarious liability of the hospital only" necessarily meant that Dr. Carroll could not provide standard-of-care testimony for defendant physicians. Without such testimony, defendants argued, plaintiff could not prove that defendant physicians were liable for malpractice, thereby entitling them to summary disposition. Further, relying on *Al-Shimmari*, 477 Mich 280, defendants argued that because plaintiff was unable to prove defendant physicians' liability for malpractice, plaintiff was, by extension, unable to prove defendant hospital's vicarious liability with respect to acts by defendant physicians.

Plaintiff argued in response that it did not matter whether Dr. Carroll was permitted to give standard-of-care testimony against defendant physicians because the trial court allowed him to testify against defendant hospital. Plaintiff also argued that during Dr. Ahmed's deposition, defense counsel purportedly stipulated that defendant hospital was vicariously liable for its agents' malpractice.

The trial court denied defendants' motion, stating:

> A hospital may be found liable on a vicarious liability theory only when the negligence of a specific employee or agent is shown based on the standard of care applicable to each agent or employee.

> Dr. Carroll is allowed to provide this testimony regarding Dr. Clark and Ahmed in the context of vicarious liability liability [sic] of [defendant] hospital.

> With Dr. Carroll's testimony, as agents/employees, [defendant] doctors remain active parties in this case. This makes the *Al-Shimmari* case distinguishable from the facts in our case.

This appeal followed.

## II. ANALYSIS

Defendants argue that the trial court's decision creates the legal anomaly of allowing plaintiff to proceed against defendant physicians without standard-of-care expert testimony, and to proceed against defendant hospital under a vicarious liability theory without being able to prove that its agents committed malpractice. We agree.

We review de novo a trial court's decision to grant or deny a motion for summary disposition. *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020). Defendants moved for summary disposition under MCR 2.116(C)(10). "A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support for a claim." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 474-475; 776 NW2d 398 (2009). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings,

-3-

admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) (quotation marks and citation omitted). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. (quotation marks and citation omitted).

"In a medical malpractice case, plaintiff bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Wischmeyer v Schanz*, 449 Mich 469, 484; 536 NW2d 760 (1995). "Failure to prove any one of these elements is fatal." *Id*.

MCL 600.2169(1) provides that a witness may not give expert testimony on the appropriate standard of care unless the witness meets the criteria provided by MCL 600.2169(1)(a)-(c). If the defendant physician is a specialist, the witness must specialize "at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered." MCL 600.2169(1)(a). If the defendant is board-certified, the expert witness must be board-certified in the same specialty. MCL 600.2169(1)(a). Plaintiff acknowledged that his original expert witness, Dr. Lieberman, did not meet the statutory criteria, and therefore, was not qualified to testify regarding the appropriate standard of care for Dr. Clark and Dr. Ahmed. The survival of plaintiff's claim against defendant physicians thus depended on the trial court's allowing him to substitute Dr. Carroll as an expert witness.

Plaintiff's claim against defendant hospital also depended on the substitution of Dr. Carroll. "A hospital may be 1) directly liable for malpractice, through claims of negligence in supervision of staff physicians as well as selection and retention of medical staff, or 2) vicariously liable for the negligence of its agents." *Cox v Bd of Hosp Managers for City of Flint*, 467 Mich 1, 11; 651 NW2d 356 (2002). Plaintiff's complaint alleged the latter theory of liability against defendant hospital—that it was vicariously liable for the acts of its agents. "Vicarious liability is based on a relationship between the parties, irrespective of participation, either by act or omission, of the one vicariously liable, under which it has been determined as a matter of policy that one person should be liable for the act of the other." *Al-Shimmari*, 477 Mich at 294 (quotation marks and citation omitted).

In *Al-Shimmari*, the plaintiff brought a medical malpractice suit against the physician who performed his surgery, and against the physician's practice and hospital under a vicarious liability theory. *Id*. at 284. The suit against the physician was dismissed for failure of proper service. *Id*. at 288-293. Our Supreme Court held that the dismissal of the physician constituted an adjudication on the merits for reasons not relevant to the instant case. After so holding, the *Al-Shimmari* Court relevantly explained:

> Because the remaining defendants may only be vicariously liable on the basis of the imputed negligence of [the physician], plaintiff must demonstrate that [the physician] was negligent in order for the remaining defendants to be found vicariously liable. However, the dismissal of the claims against [the physician] operates as an adjudication on the merits of the claims against [the physician]. Plaintiff consequently is unable to show that the remaining defendants are vicariously liable for the acts of [the physician], because the dismissal of the claims

> against [the physician] prevents plaintiff from arguing the merits of the negligence claim against [the physician]. [*Id*. at 295-296.]

Accordingly, the Court held that the hospital and the practice were entitled to summary disposition on the plaintiff's vicarious liability claims. *Id*. at 297.

With these principles in mind, it is necessary to consider the implications of the trial court's July 7, 2020 order granting plaintiff's motion to substitute Dr. Carroll as an expert on the standard of care and causation for a PICU physician. The court's order provided that Dr. Carroll could be added as an expert "relating to the possible vicarious liability of the hospital only." We agree with defendants that the phrase "of the hospital only," on its face, suggests that Dr. Carroll's testimony was limited to apply only to defendant hospital's liability, and thus could not support plaintiff's claim that the individual defendants, Dr. Clark and Dr. Ahmed, breached the standard of care for a PICU physician. Plaintiff does not offer any alternative interpretation of the phrase "of the hospital only."

While this is the most logical interpretation of the court's statement, it creates an internal inconsistency. None of the remaining individual defendants in the lawsuit at that time were PICU physicians, which is the only relevant standard-of-care testimony that Dr. Carroll could provide. It is therefore unclear what standard-of-care testimony the trial court's order allowed Dr. Carroll to provide, because there is no logical way that Dr. Carroll's standard-of-care testimony could apply to "the hospital only." A hospital cannot be vicariously liable for the malpractice of a practitioner who was named as a defendant, but was later dismissed pursuant to an adjudication on the merits. See *Al-Shimmari*, 477 Mich at 295-297. If the trial court's order precluded Dr. Carroll from offering testimony on whether Dr. Clark or Dr. Ahmed breached the standard of care for a PICU physician, then plaintiff was necessarily precluded from establishing that either Dr. Clark and Dr. Ahmed were negligent and, consequently, could not establish "the possible liability of the hospital only," as the order stated.

This internal inconsistency bled into the trial court's order on defendants' summary disposition. The court stated that Dr. Carroll was permitted to give standard-of-care testimony regarding Dr. Clark and Dr. Ahmed "in the context of vicarious liability," and stated that *Al-Shimmari* was distinguishable because defendant physicians "remain active parties in this case." In effect, the trial court declined to dismiss Dr. Clark and Dr. Ahmed even though it had also decided that expert testimony regarding their standard of care would not be permitted to prove their individual liability. Yet, without standard-of-care testimony applicable to defendant physicians, they were entitled to summary disposition, see *Wischmeyer*, 449 Mich at 484, and their dismissal on the merits would entitle defendant hospital to summary disposition on plaintiff's vicarious liability claim, see *Al-Shimmari*, 477 Mich at 297.

In light of this, defendants urge this Court to hold that they are entitled to summary disposition because the trial court's July 7, 2020 order necessarily precluded Dr. Carroll from offering standard-of-care testimony with respect to the defendant physicians. While we agree that defendants' interpretation of the July 7, 2020 order is the most logical way to read the order, doing so leads to nonsensical results. As explained, if the trial court's order is interpreted as defendants urge, then Dr. Carroll could *not* provide *any* standard-of-care testimony. This result would be in spite of (1) the trial court's order explicitly stating that Dr. Carroll *could* provide (at least limited)

standard-of-care testimony and (2) the trial court's finding that plaintiff had established good cause to substitute Dr. Carroll for Dr. Lieberman as plaintiff's PICU standard-of-care expert.[2]

We therefore believe the most prudent course of action is to have the trial court clarify its July 7, 2020 order. The trial court necessarily abuses its discretion when it makes an error of law. *Gentris v State Farm Mut Auto Ins Co*, 297 Mich App 354, 364; 824 NW2d 609 (2017). The trial court's decision to grant plaintiff's motion to substitute Dr. Carroll as an expert witness subject to apparent limitations on his testimony was facially inexplicable and cannot otherwise be reconciled with the applicable law concerning the elements of a medical malpractice action and vicarious liability. The trial court's apparent exclusion of standard-of-care expert testimony against Dr. Ahmed and Dr. Clark left plaintiff unable to prove his malpractice claim against them, and thus had a dispositive effect with respect to the claims against them and, by extension, plaintiff's vicarious liability claims against defendant hospital. See *Al-Shimmari*, 477 Mich at 295-296. Despite this, the trial court denied defendants' motion for summary disposition, which in turn created an anomaly in which the restricted testimony deprived plaintiff of essential evidence necessary to succeed on his malpractice claim against defendant physicians while still retaining defendant physicians as defendants for the purpose of establishing defendant hospital's vicarious liability. Under the circumstances, we believe it is appropriate to vacate the trial court's order denying summary disposition and remand to the trial court for clarification of its decision on plaintiff's motion to amend the witness list and for reconsideration of defendants' motion for summary disposition consistent with that clarification and our Supreme Court's decision in *Al-Shimmari*, 477 Mich 280.[3]

---

[2] We further note that defendants' motion opposing plaintiff's motion to add Dr. Carroll as a witness argued that plaintiff should not be allowed to do so because (1) he was at fault for failing to timely verify Dr. Lieberman's credentials and (2) adding a new expert with new theories would impose an undue hardship on the defendants—arguments that applied equally to defendant physicians and defendant hospital. The trial court rejected these arguments, finding that plaintiff had established good cause for the substitution. Yet, in so doing, the trial court did not explain why, if plaintiff established good cause, Dr. Carroll's testimony should be restricted, nor did the court explain how the substitution could apparently impose undue hardship on defendant physicians but not defendant hospital.

[3] Briefly, we disagree with plaintiff's contention that defendant hospital stipulated to its vicarious liability for Dr. Clark's and Dr. Ahmed's alleged malpractice and so it is immaterial whether Dr. Carroll can give standard-of-care testimony against the physicians. In support of this argument, plaintiff relies on statements by defense counsel during Dr. Ahmed's deposition. In the deposition, plaintiff questioned Dr. Ahmed about his responsibility for residents and fellows involved in EE's care. Defense counsel stated, "[W]e'll stipulate that the residents, [f]ellows, interns or employees of Children's Hospital of Michigan [that] Dr. Ahmed was supervising [were] employee[s] of Children's Hospital of Michigan. The hospital accepts liability for all related care." This statement cannot reasonably be construed as an admission that the hospital was conceding liability for Dr. Ahmed's malpractice. The statement acknowledged that defendants were not contesting that Dr. Ahmed was responsible for supervising the hospital's

Vacated and remanded for further proceedings consistent with this opinion. We retain jurisdiction.

/s/ Kathleen Jansen
/s/ Colleen A. O'Brien
/s/ Noah P. Hood

---

agents and employee's involved in EE's care, but it was not a concession that its agents and employees were actually negligent. Rather, *if* plaintiff proved malpractice by defendant hospital's agents and employees, then defendant hospital would be vicariously liable.

# Court of Appeals, State of Michigan

## ORDER

Esraa Elkadri v Children's Hospital of Michigan

Docket No. 357207

LC No. 18-010381-NH

Kathleen Jansen
Presiding Judge

Colleen A. O'Brien

Noah P. Hood
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 28 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, we vacate the trial court's order denying summary disposition and remand to the trial court for clarification of its decision on plaintiff's motion to amend the witness list and for reconsideration of defendants' motion for summary disposition consistent with that clarification and our Supreme Court's decision in *Al-Shimmari v Detroit Med Ctr*, 477 Mich 280; 731 NW2d 29 (2007). The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

July 21, 2022
Date

_____
Chief Clerk